**Dated: March 6, 2019**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-12476-JDL |
| ADAM L. LEONARD, ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| BART COLLINS and ) | |
| NITA COLLINS, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No. 18-01081-JDL |
| ) | |
| ADAM L. LEONARD, ) | |
| ) | |
| Defendant. ) | |

**ORDER OVERRULING MOTION TO DISMISS**

**I. Introduction**

This is an adversary proceeding brought by the purchasers of a home built by a Chapter 7 debtor-contractor. Plaintiffs, Bart and Nita Collins (collectively, "Collins"), seek to bar dischargeability of the Debtor's asserted debt to them under 11 U.S.C. § 523(a)(2)(A) (misrepresentation and false pretenses) and § 523(a)(6) (willful and malicious injury to

person or property-conversion). This matter comes on for consideration upon the *Motion to Dismiss Claims That Are Non-Core, Unrelated to the Bankruptcy* filed by the Debtor-Defendant, Adam L. Leonard ("Leonard") [Doc. 4] and *Plaintiff"'s Response to Motion to Dismiss Claims* filed by Collins [Doc. 6].

## II. Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) as a matter arising under 11 U.S.C. § 523(a). Pursuant to 28 U.S.C. § 157(b)(2)(I), this action is a core proceeding since it relates to the dischargeability of debts.

## III. The Standards for a Motion to Dismiss

A motion to dismiss for "failure to state a claim upon which relief can be granted" is governed by Rule 12(b)(6) of the Fed.R.Civ P., made applicable to adversary proceedings by Fed.R.Bankr.P. 7012.[1] The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). In considering a motion to dismiss, the Court must evaluate the facts alleged in the complaint in the light most favorable to the plaintiff. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). The Court must construe a complaint in the light most favorable to the plaintiff, taken as true all factual allegations and making all reasonable inferences in the plaintiff's favor that can be drawn from the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). "That the Court excepts them as true, however, does not mean allegations

---

[1] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

in the complaint are in fact true; a plaintiff is not required to prove his case at the pleading stage." *Higginbottom v. Mid-Del School District,* 2016 WL 951691 (W.D. Okla. 2016). The Court must not "weigh potential evidence that the parties might present at trial" in order to test the sufficiency of the complaint. *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). It is well recognized that "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice". *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). In *Twombly*, the Supreme Court ruled that a complaint "does not need detailed factual allegations," but must contain "enough facts to state a claim to relief that is *plausible* on its face." *Id.* (Emphasis added); In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id.* Thus, in *Twombly*, the Supreme Court formulated a "plausibility standard" for evaluating whether a complaint survives a motion to dismiss. *In re Ward*, 589 B.R. 424, 427 (Bankr. W.D. Okla. 2018).

In applying *Twombly's* "plausibility standard", the Tenth Circuit has held that the standard lies as a middle ground between "heightened fact pleading" and "formulaic recitation of the elements of a cause of action." *Robbins v. Oklahoma ex rel., Department of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008). See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Cook v. Baca,* 512 Fed.Appx. 810, 821 (10th Cir. 2013)*; Lamar v. Boyd,* 508 Fed.Appx. 711, 713-14 (10th Cir. 2013); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (a complaint must give the court reason to believe the plaintiff has a reasonable likelihood of mustering factual support for the claims raised). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Bare legal conclusions and simple recitations of the elements of a cause of action do not satisfy this standard. *Twombly*, 550 U.S. at 555; *In re AgFeed USA, LLC*, 546 B.R. 318, 337 (Bankr. D. Del. 2016) (A complaint is insufficient when its allegations simply mirror the language of the applicable statutory section).

Since a motion to dismiss is judged on the well-pled allegations of a complaint being accepted as true, the substantive allegations of Plaintiffs' Amended Complaint, [Doc. 3], need be examined, and the Court must determine whether the complaint alleges sufficient facts supporting all the elements necessary to establish an entitlement to relief under the claims raised. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

### IV. The Allegations of the Complaint

In November 2013, Collins, as buyers, entered into a written contract with Leonard and his wholly owned limited liability company, Mustard Seed Construction, LLC ("MSC"), for the construction of a custom-built home located in Yukon, Oklahoma, for a fixed price of $264,524.00, plus an upward adjustment for an additional sidewalk and upgraded sanitary system bringing the total purchase price to $272,349.00. [Doc. 3, ¶ 5]. Collins

allege that Leonard made numerous false representations in writing to induce them to enter into the contract including, but not limited to, that MSC was "licensed, insured and experienced"; that it was backed by a million-dollar insurance policy; and that it had an A+ rating with the Better Business Bureau. [Doc. 3, ¶ 6-7]. The contract the Collins executed stated that Leonard would construct the home in accordance with the requirements of the building code, the neighborhood covenants and the plans for a pre-negotiated fixed price. [Doc. 3, ¶ 11]. Collins allege that Leonard failed to construct the residence in the manner consistent with the requirements of the building code, the neighborhood covenants, and the plans for structures of the fixed price cost agreement. [Doc. 3, ¶ 11]. Collins allege MSC and Leonard knew that the one-year limited home warranty applicable to the homes construction was not honored, that Leonard "knew that he did not intend to honor the Warranty and he never made any attempt to correct any of the defects in material or workmanship in the Home that were brought to his attention during the warranty period." [Doc. 3, ¶ 12].

Collins further allege that Leonard "knowingly and intentionally constructed the home in a way that allowed him to appropriate a large percentage of the Collins' money to himself while allowing the construction to suffer from serious defects in quality, including numerous building code violations, safety violations ... and major deviations from the contract plans, all the while continually increasing the price to the Collins and padding his own pockets by violating the terms of the fixed price Contract." [Doc. 3, ¶ 13]. Collins spend several pages detailing the "Building Code Violations" which they allege cost them substantial amounts of money to correct. They also detail eleven (11) pages of "Contract Violations" setting forth how Leonard deviated from the plans and specifications by omitting

5

certain features and materials or using inferior materials while charging the Collins for the features and materials as per the Contract in order to increase his profit.

Another section of the Collins Amended Complaint entitled "Fraudulent Billing Practices" consists of sixteen (16) paragraphs detailing how Leonard "knowingly, intentionally and fraudulently over-billed and double-billed the Collins for certain costs throughout the construction of their home." [Doc. 3, ¶ 34-50]. In other instances, the Collins allege that they were charged for work that Leonard never performed, materials that were never used or charged extra for services and materials that should have been included within the fixed price Contract.

Based upon the factual allegations which, in extremely abbreviated form set forth above, the Collins seek to have Leonard's debt to them to be determine non-dischargeable upon four Claims for Relief: (1) false pretenses under § 523(a)(2)(A) with damages in the amount of $301,401.00;[2] (2) conversion under § 523(a)(6) with damages in the amount of $198,068.00; (3) false representations under § 523(a)(2)(A) with damages in the amount of $301,401.00 and (4) slander of title-willful and intentional injury to property-under § 523(a)(6) with the court granting injunctive relief by ordering the mechanic's lien which Leonard placed on their property be released and damages determined by the court.[3]

---

[2] In the alternative to having the Bankruptcy Court determine the amount of damages, the Collins ask that this Court enter a non-dischargeable judgment in their favor with the amount of damages to be reserved for determination by the District Court within and for Canadian County, Oklahoma, wherein there is pending litigation between the parties.

[3] The Plaintiffs' Fourth Cause of Action asserts a claim for slander of title due to Leonard wrongfully filing a Mechanic's Lien against Plaintiffs' property. The factual allegations for such a claim are contained in numerical ¶ 14 of the Amended Complaint. [Doc. 3]. The actual, bad faith filing of a mechanic's lien that will support a slander of title claim can also constitute a "willful and malicious injury" rendering a debt nondischargeable under § 523(a)(6). *In re Snyder*, 542 B.R. 429

### 1. Plaintiffs' Section 523(a)(2)(A) Claims

Section 523(a)(2)(A) is phrased in the disjunctive, meaning that false pretenses, false representation and actual fraud are three separate grounds for non-dischargeability, and these independent causes of action require proof of different elements. *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 222-23 (10th Cir. BAP 2013); *In re Munoz*, 536 B.R. 879, 884 (Bankr. D. Colo. 2015); *In re Call*, 560 B.R 814, 821 (Bankr. D. Utah 2016). While the elements for each theory under § 523(a)(2)(A) differ, the common thread is a debtor's intent to defraud a creditor. *Munoz,* 536 B.R. at 884. As set forth above, the Amended Complaint [Doc. 3], asserts claims for false pretenses and false representation which represent different concepts and have somewhat different meanings. The Court will outline the elements for each cause of action in the order outlined in § 523(a)(2)(A).

### A. False Pretenses

The Plaintiffs' First Cause of Action is one for false pretenses. False pretenses under §523 (a)(2)(A) are implied misrepresentations intended to create and foster a false impression. *In re Sturgeon*, 496 B.R. 215, 223 (10th Cir. BAP 2013). Unlike false representations, which are express misrepresentations, false pretenses include conduct and material omissions. *Id.;* See *Marks v. Hentges (In re Hentges),* 373 B.R. 709, 725 (Bankr. N.D. Okla. 2007) (false pretenses are "implied misrepresentations or conduct intended to create and foster a false impression."); *Fowler Bros. v. Young (In re Young),*

---

(Bankr. N.D. Ill. 2015); *In re Hetrick*, 379 B.R. 612 (Bankr. E.D. Va. 2007). Defendant Leonard, however, excludes from his Motion to Dismiss any claim based on facts alleged in numerical ¶ 14 of the Amended Complaint. [Doc. 3].

91 F.3d 1367, 1374-75 (10th Cir. 1996) (failure to disclose may constitute a false representation or false pretenses); *Harmon v. Kobrin, (In re Harmon)*, 250 F.3d 1240, 1246 n. 4 (9th Cir. 2001); *The William W. Barney, M.D. P.C. Retirement Fund v. Perkins (In re Perkins)*, 298 B.R. 778, 788 (Bankr.D. Utah 2003) (stating that "[a] false pretense as used in § 523(a)(2)(A) includes material omissions, and means 'implied misrepresentations or conduct intended to create and foster a false impression'."); *Call*, 560 B.R. at 821 (Bankr. D. Utah 2016) ("false pretenses can be 'defined as any series of events, when considered collectively, that create a contrived and misleading understanding of the transaction, in which a creditor is wrongfully induced to extend money or property to the debtor'.") (citing *Stephens v. Antonious (In re Antonious)*, 358 B.R. 172, 182 (Bankr. E.D. Pa 2006)).

Under their claim for false pretenses, the Collins assert that Leonard's representations of himself and his business as set out in detail in the Amended Complaint that he and his business were licensed, insured and experienced; his representation that he had constructed the model home he showed the Collins; that he was familiar with and understood building codes, neighborhood covenants and plans for the Collins home; and that the home would be built in compliance with codes, covenants and plans were all false. Collins allege that these representations were not true and that Leonard "made them with the intent to deceive the Collins in order to induce the Collins to hire him to build their home." [Doc. 3, ¶ 54].

### B. False Representation

Collins Third Cause of Action alleges that the debt owed by the Debtor arose from false representation. To prevail, the Plaintiffs must prove by a preponderance of evidence

the traditional, long-standing elements for proving misrepresentation or fraud under the common law of torts in the Restatement (Second) of Torts, § 525 (1976) as understood when § 523(a)(2)(A) was enacted in 1978.  See *Field v. Mans*, 516 U.S. 59, 69 n. 9, 116 S.Ct. 437, 443-44 (1995).  Those elements are (1) that the debtor made a false representation; (2) the representation was made with the intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the creditor was damaged as a result. *Id.; Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996); *In re Riesbesell*, 586 F.3d 782, 789 (10th Cir. 2009); *In re Hentges*, 373 B.R. 709, 723 (Bankr. N.D. Okla. 2007).  When one has a duty to speak, both concealment and silence can constitute fraudulent representations. *Hentges* at 725. An overt act is not required.  An intent to deceive may be inferred from a "reckless disregard for the truth or falsity of the statement combined with sheer magnitude of the resultant misrepresentation." *Equitable Bank v. Miller, (In re Miller),* 39 F.3d 301, 305 (11th Cir. 1994).  Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive.

      The Collins in their misrepresentation claim reiterate the same facts as with their false pretenses claim and allege that "Leonard knew that these representations were false, he intended for the Collins to rely on these representations in deciding to enter it into the construction contract with him, they did reasonably and justifiably relied on those representations, and were damaged as a result." [Doc. 3, ¶ 67].

### C. Scienter-Intent

In the Tenth Circuit any of the three types of conduct specified in § 523(a)(2)(A) (false pretenses, misrepresentation or actual fraud) have been narrowly construed to limit the harsh result of nondischargeability to "frauds involving moral turpitude or intentional wrong." *In re Johnson*, 477 B.R. 156, 169 (10th Cir. BAP 2012). "[F]raud implied in law which may arise in the absence of bad faith or immorality" is not sufficient. *Id.*; *Kukuk*, 225 B.R. 778, 787 (10th Cir. BAP 1998) (quoting *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir. 1986) (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991)). The debtor must have acted with the subjective intent to deceive the creditor. *First National Bank v. Cribbs (In re Cribbs)*, 327 B.R. 668, 674 (10th Cir. BAP 2005), *aff'd,* 2006 WL 1875366 (10th Cir. 2006).

Because fraudulent intent is rarely admitted by a debtor, courts uniformly recognize it may be established by circumstantial evidence or by inferences drawn from a course of conduct or from the totality of the circumstances. *Cribbs*, 327 B.R. at 673; *Copper v. Lemke (In re Lemke),* 423 B.R. 917, 922 (10th Cir. BAP 2010) (citing *Young*, 91 F.3d at 1375). Making a representation to a creditor with a "reckless disregard for the truth" may be some evidence of an intent to deceive the creditor. *Id*. However, a finding of "reckless disregard for the truth" translates into subjective intent to deceive (i.e. scienter) only in very narrow circumstances. *Id*.; *Kukuk*, 225 B.R. at 787; *Johnson*, 477 B.R. at 169. Accordingly, a debtor's credibility is an important factor in finding or rejecting a finding of fraudulent intent.

### D. Do Plaintiffs' Claims of Non-Dischargeability Which Arise Out of the Contractual Relationship with Leonard State a Claim for Relief under § 523(a)(2)(A)

Leonard's Motion to Dismiss is totally devoid of any statutory or case authority addressing the real issue before the Court which is assuming the factual allegations in the Amended Complaint are accepted as true, as the Court must when testing the sufficiency of a motion to dismiss, do they state a claim for relief under the standards of Rule 12(b)(6) and § 523(a). Rather, Leonard's two page Motion in conclusory language simply states that the court should "dismiss all claims ... due to the issue being a contract dispute and not a core proceeding under § 523." [Doc. 4, pg. 2]. The determination of whether a debt is non-dischargeable under § 523 *is* a core proceeding and is not subject to question. 28 U.S.C. § 157(b)(2)(I). (Emphasis added). What Leonard could legitimately argue is that the claims which Collins is asserting are claims for breach of contract which do not give rise to the tort-based claims of fraud necessary to establish non-dischargeability.

"It is a matter of well-entranced jurisprudence that a contractor's failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud, misrepresentation or false pretenses under § 523(a)(2)(A)." *In re Giquinto*, 388 B.R.152, 166 (E.D. Bankr. Pa. 2008); *In re Antonious*, 358 B.R. at 182 ("mere breach of a construction contract does not establish fraud or misrepresentation for purposes of section 532(a)(2)(A)")(citations omitted). Failure to fulfill a contractual obligation by itself does not establish a misrepresentation for purposes of § 523(a)(2)(A). 3 Collier on bankruptcy ¶ 523.08 at 523-54 (15th ed. 1994); *Garza v. Baker (In re Baker),* 139 B.R. 692, 694 (Bankr. N.D. Ohio 1992). [L]anguage in the sales contract stating that the contractor

11

will build a home in good and workmanlike manner according to specifications does not amount to a misrepresentation merely because the contractor breaches that promise." *Rezin v. Barr (In re Barr),* 194 B.R. 1009, 1017 (Bankr. N.D. Ill. 1996). "However, if a debtor enters into a contract intending not to comply with its terms and later defaults under that contract, such contract may provide a basis for exceptions to discharge on the grounds of fraud if the other remaining elements are satisfied." *Leeb v. Guy (In re Guy)*; 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988); *In re Maurer*, 112 B.R. 710, 713 (Bankr. E.D. Pa.1990) ("To be actionable as fraud, the plaintiff must establish that the debtor entered into the contract with the intent of never complying with its terms."); *In re Moen*, 238 B.R. 785, 791 ("A false representation made under the circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and satisfies the knowledge requirement.") (quoting *In re Duggan*, 169 B.R. 318, 324 (Bankr. E.D. N.Y. 1994); *In re Cozart,* 417 B.R. 116, 127 (Bankr. W.D. Ark. 2009) ("Based on his knowledge and experience, (homebuilder) had no factual basis to assert that he hired the best contractors, that he was a quality home builder, or that he was building a quality house. Because a reckless disregard for the truth is sufficient to satisfy the knowledge requirement, the second requirement (of § 523(a)(2)(A)) has been met").

Likewise, even when the seller simply magnifies an opinion of his work, it may be non-actionable "sales puffery". "[W]hen a proposed seller goes beyond [mere exaggeration of the qualities which an article has], assigns to the article qualities which it does not possess, does not simply magnify in opinion the advantages which it has but invents advantages and falsely asserts their existence, he transcends the limits of 'puffing'

and engages in false representations and pretenses." *Id.,* 417 B.R. at 128 *(quoting Dunn v. Borto,* 369 F.3d 421, 431 (4th Cir. 2004)).  In short, there is no doubt that given the proper circumstances, a contractual relationship between contractor and the customer can give rise to a claim for non-dischargeability.[4]

Recognizing that the debtor will rarely admit to fraudulent knowledge or intent, "the bankruptcy court must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor'." *In re Anderson*, 403 B.R. 871, 877 (Bankr. D. Kan. 2009); *In re Lemke*, 423 B.R. 917, 922 (10th Cir. BAP 2010) ("Intent to deceive may be inferred from the totality of circumstances.").  Whether or not the Collins can come forward with sufficient facts to establish Leonard's intent to deceive will be for the Court's decision as the finder of fact either at trial or by summary judgment.   At this stage of the proceeding, however, the Collins have pled sufficient facts which assumed to be true for pleading purposes are sufficient to survive Leonard's Motion to Dismiss the Collins § 523(a)(2)(A) false pretenses and false representations claims.

### 2. Plaintiff's § 523(a)(6) Conversion Claims

Collins Second Cause of Action alleges that part of the debt owed them by Leonard was a non-dischargeable act of conversion under § 523(a)(6) because "[e]very time that

---

[4] In their Response to the Motion [Doc. 6], the Collins place primary reliance on the case of *Maljamar Fuel Stop, LLC v. Sherman (In re Sherman)*, 2018 WL 3617660 (Bankr. D. N.M. 2018) for the proposition that an intentional misrepresentation as to a material fact or qualification when soliciting a construction contract could form the basis of an objection to discharge. That is true; however, that case involved presentation of the issue of dischargeability by way of a motion for summary judgment where facts were presented.  In the present case, the Motion to Dismiss assumes the allegations to be true.

Mr. Leonard took money from the Collins, as set out above, (whether it was the agreed contract price or an additional sum of money) and he knowingly and intentionally did not provide the goods or services that those funds were intended to pay for, Mr. Leonard converted the difference in value between the goods and services provided and those paid for." [Doc. 3, ¶ 61]. In their Response, the Collins allege that their Amended Complaint recites "specific allegations of funds converted by Mr. Leonard when he intentionally provided them with a less valuable house than the one they were paying for." [Doc 6, pg. 6]. In his Motion to Dismiss Leonard does not even mention the term "conversion" or why the § 523(a)(6) claim should be dismissed.

Section 523(a)(6) excepts from the discharge of any individual debtor any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful" and "malicious" under § 523(a)(6) are two, distinct elements. *In re Gagle*, 230 B.R. 174, 179 (Bankr. D. Utah 1999); *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999) (stating that "the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements, that the injury was both 'willful' and 'malicious'.").

Conversion of property of another can serve as grounds for non-dischargeability under § 523(a)(6). *Longley,* 235 B.R. at 657 (noting that "conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6)."); *Bank of Utah v. Auto Outlet, Inc. (Auto Outlet, Inc.)*, 71 B.R. 674, 676 (Bankr. D. Utah 1987) ("Although this section does not specifically mention conversion, 'willful and malicious injury' was intended to include 'willful and malicious conversion.'"). But, because section 523(a)(6) requires both willful and malicious injury, "[i[t is clear .... that a 'knowing breach of contract', without more, does not create a debt which is nondischargeable due to willful

14

and malicious injury." *In re Tinkler*, 311 B.R. 869, 878 (Bankr. D. Colo. 2004); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct.151 (1934) (holding that "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances.")*; Dorr & Associates v. Pasek (In re Pasek),* 129 B.R. 247, 252 (Bankr. D. Wy. 1991), *aff''d,* 983 F.2d 1524 (10th Cir.1993) (stating that "an intentional breach of contract, without more, is not sufficient to establish a willful and malicious injury for the purposes of § 523(a)(6).").

Under Oklahoma law, "conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the his rights therein." *Welty v. Martinaire of Oklahoma, Inc.*, 1994 OK 10, 867 P.2d 1273; *In re Hentges,* 373 B.R. 709, 730 (Bankr. N.D. Okla. 2007). "The general rule in Oklahoma is that only *tangible* personal property may be converted. Conversion will not lie for a debt." *Id.*; *Shebester v. Triple Crown Insurers,* 826 P.2d 603, 604 (Okla. 1992). "The plaintiff must have a general property right in the converted property and the right to immediate possession of it." *Duggins v. Bratt (In re Bratt)*, 491 B.R. 572, 578 (Bankr. D. Kan. 2013).

It appears to the Court that when Collins paid Leonard the funds for which they believe they did not receive value, those payments were no longer their property and could not be the subject of a conversion in the absence of a showing that the funds were somehow "trust" funds or held in a fiduciary capacity.  See generally *Langdon v. Alexander (In re Alexander)*, 19 B.R. 149 (Bankr. D. Ore. 1981) (property owners who made down payments to contractor for remodeling work lacked property interest in funds subject to conversion where the statute neither restricted contractor's use of funds nor reserved to property owners any rights to specific funds); *In re Lambillotte*, 17 B.R. 256, 258 (Bankr.

M.D. Fla. 1982) ("[I]t is essential that the Plaintiffs show that the converted item is indeed their property. This they cannot do.  Under the instant facts it is clear that once the Plaintiffs paid the $8,700.00 down payment, it was no longer their property and could not be the subject of a conversion.").

It may well be that  once the Collins paid Leonard for work that he didn't do, or didn't do properly, they may have a right to recover money, a *chose in action*, based in either contract and/or fraud depending upon the facts, which under Oklahoma law is considered *intangible personal property, not tangible personal property* which may be converted. *Shebester*, 826 P.2d at 604 (Emphasis the court's).  The problem the Court has, however, is that there is nothing before the Court as to whether there was any agreement, written or verbal, as to whether the payments by Collins's were to be segregated, held in trust or otherwise exclusively for their home's construction such that the Collins retained a property interest therein.[5]   At this stage of the proceeding and given the harsh remedy of a motion to dismiss, to which the Court must construe in the most favorable light to the Plaintiffs, the Motion does not provide a sufficient basis for a dismissal of the § 523(a)(6) conversion claim.  Accordingly,

**IT IS ORDERED**  that *the Motion to Dismiss Claims That Are Non-Core, Unrelated to the Bankruptcy* filed by Defendant Adam L. Leonard [Doc. 4] is hereby **Denied.** Defendant is given twenty (20) days from the date of this Order to file his answer to the Amended Complaint.

**# # #**

---

[5]The Amended Complaint makes several references to the written contract between Collins and Leonard and MSC dated November 26, 2013.  One paragraph of the written contract is quoted in the Amended Complaint. [Doc. 3, ¶ 7].  Neither the entire contract nor any documents relative to the transaction between the parties is before the Court.